IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:16-cr-00030 |
| v. | ) | |
| | ) | |
| JEROME TYLER LOTTIER, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

In 2016, Jerome Tyler Lottier pleaded guilty to one count of possession with the intent to distribute heroin and one count of possessing a firearm in furtherance of a drug trafficking crime. The court sentenced Lottier to 96 months imprisonment. Now before the court is Lottier's motion to vacate or correct his sentence under 28 U.S.C. § 2255. Lottier challenges his guilty plea and resulting conviction on the grounds of ineffective assistance of counsel. Lottier has also filed a motion to appoint counsel and a motion for release on bond pending a ruling on his § 2255 motion.

For the reasons stated below, these motions will be denied.

I. BACKGROUND

**A. Lottier's Drug Trafficking Activities**

Lottier was 51 years old at the time of his sentencing in 2017. He became a heroin dealer in 2015. At his sentencing, Lottier testified that he had been an addict since the age of 15 or 16. Because he could no longer afford his habit through legitimate work, Lottier turned to dealing to support his habit and his fiancée's habit.

On March 3, 2016, after conducting surveillance on Lottier's home, agents stopped Lottier in his vehicle and seized approximately 50 bags of heroin from his center console and an

additional 21 bags of heroin from his person.  Agents obtained a search warrant for his home.  During the execution of that warrant on March 4, 2016, agents seized a 9mm pistol and approximately 150 bags of heroin from a safe in his bedroom.  Elsewhere in the residence, agents recovered digital scales, packaging materials, approximately 1.3 grams of methamphetamine, and $3,280 in cash.  During his Mirandized interview, Lottier admitted that he was a heroin dealer, that he received several bricks of heroin at a time from his supplier in a "fronting" arrangement, and that he was the owner and purchaser of the gun recovered at his residence, which he kept for protection in his drug business after a drug-related home invasion.

Agents then gave him the opportunity to cooperate with the Roanoke City Police Department, and to that end, Lottier made two controlled purchases on behalf of the Police Department and federal investigators.  Lottier then went missing.  He was supposed to communicated affirmatively with law enforcement regarding his whereabouts and activities while out on release.  Instead, he failed to communicate with law enforcement agents for roughly two months following the controlled purchases.  Agents were unable to locate him until May 25, 2016, when he was stopped and apprehended at a location close to his home.  Despite knowing that he was working under a cooperative arrangement, Lottier had distribution quantities of narcotics and two firearms in his possession when he was stopped.  He was arrested and interviewed.  At the interview, Lottier admitted to purchasing between one and three bricks of heroin three times per week from an unindicted co-conspirator for distribution.  He also described his involvement with another supplier, from whom Lottier had been purchasing one brick per month for the previous six months, and the amounts had increased to four or six bricks per months on occasion.

Lab results eventually confirmed that the average net weight of a single dosage baggie of heroin distributed by Lottier contained 0.073 grams of heroin. It was then determined that Lottier was responsible, conservatively, for a total heroin drug weight of 518.23 grams.

**B. Indictment and Guilty Plea**

Lottier was charged in a three-count indictment on June 2, 2016 alleging (1) possession with the intent to distribute and distribution of heroin, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (2) possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c); and (3) possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). (Indictment, Dkt. No. 11.) On September 16, 2016, Lottier pleaded guilty pursuant to a written plea agreement. (Plea Agmt., Dkt. No. 38.) The plea agreement provided for Lottier's plea to counts one and two in exchange for the dismissal of count three. In the Agreement, the parties stipulated to a drug weight of between 100 and 400 grams of heroin, forfeiture of cash and firearms, and a waiver of Lottier's right to appeal or collaterally attack his conviction and sentence, except for claims of ineffective assistance of counsel or claims that cannot be waived as a matter of law. (*Id.* at 3, 7, 9.)

He also stipulated in the agreement that there was a factual basis to support every allegation in the indictment, and that all matters pertaining to the counts alleged in the indictment were relevant conduct for the purposes of sentencing. (*Id.* at 3, 13.)

At the plea hearing, the court reviewed the charges against Lottier in detail. The court read the charges to Lottier, and he indicated that he understood the charges. (9/16/16 Hr'g Tr. 6:6–7:10, Dkt. No. 62.) The government proceeded to review the plea agreement, mentioning the following: (1) Lottier's intention to plead guilty to counts one and two of the indictment; (2) the government's agreement to dismiss count three; (3) the court's sole discretion to determine and impose sentence in the case; (4) the parties' stipulation regarding drug weight; (5) forfeiture;

(6) the possibility of a substantial assistance motion by the government; (7) waiver of the right to appeal and collaterally attack; and (8) Lottier's satisfaction with counsel's representation. Lottier stated that he fully understood the terms of the plea agreement as summarized by the government and as a result of a review of the agreement with his attorney. (*Id.* at 13:25–15:2.) Then, the court discussed certain provisions of the plea agreement in detail, including the stipulation on drug weight. Lottier indicated that he wanted the court to accept the plea agreement. (*Id.* at 16:20–22.)

Later in the hearing, the government submitted its factual basis for the guilty plea. (Dkt. No. 39.) The factual basis provided that Lottier possessed and was distributing heroin in and around Roanoke between March and May 2016, possessed one or more firearms in furtherance of his drug trafficking activity, and admitted to his crimes during two Mirandized and voluntary law enforcement interviews. Lottier acknowledged that he had read, signed, and agreed with the factual basis in its entirety. (9/16/16 Hr'g Tr. 23:16–24:2.) The court asked Lottier to explain, in his own words, why he was guilty. Lottier responded: "In order to support my addiction problems, I did sell heroin from my home or in and around the area, and I did possess a firearm at the time of doing it." (*Id.* at 24:3–12.) Finally, Lottier indicated that he was satisfied with the quality of his attorney's representation. (*Id.* 24:25–26:9.)

**C. Sworn Declaration**

Lottier attached a sworn declaration as an exhibit to his § 2255 motion. It states as follows:

- Counsel failed to properly advise me of all of the charged offenses against me, he also failed to inform me of all of the essential elements of the charged offenses.

- Counsel advised me to plead guilty, because they found drugs and a gun together, and that's all that was needed to convict me.

4

- Counsel's advice was to "play the drug addict card" and stated to me they "won't help you with one hand and fight you with the other."

- Counsel never discussed any possible defenses, never discussed any other possible plea options, including the option of an open plea.

- Counsel failed to negotiate regarding the plea agreement, and instead just advised me to sign the plea agreement.

- Counsel failed to fully investigate the facts of the case and failed to properly determine the facts as they applied (or did not apply) to the elements of the charged offenses.

- I am actually innocent of all charged offenses of 18 U.S.C. 924(c) and pled guilty based on misinformation from my attorney regarding the facts of the case would satisfy the elements of a 924(c) offense.

- That counsel advised me to enter a plea agreement that constructively amended the indictment, which violated my 5th and 6th Amendment Rights.

- That counsel's misinformation created a false pretense by me, that I was in fact guilty of the elements of the charged offense, this false pretense caused me to enter a guilty plea, during the Rule 11 hearing I made statements based on this misinformation and false pretenses. If not for counsel's errors the Rule 11 hearing would not have ever occurred, nor would I have made any statements regarding the charged offenses or any relevant facts related to the charged offenses.

- Had counsel properly advised me through this proceeding, I would not have entered into this guilty plea, and instead would have proceeded to trial.

- Counsel failed to ensure that my indictments satisfied the 5th Amendment that my plea was unconstitutional, that my Rule hearing complied to the requirements of the Rule.

- Counsel failed to properly consider the stipulated drug amount of 100 to 400 grams, including his failure to account for my personal use, and could not properly advise such a stipulation without determining the amount of personal use, as well as what amount was accountable to which charged offense.

- Counsel failed to provide me an adversarial process.

- Based on my counsel's failures I believe my constitutional rights were violated and my convictions should be vacated. I also believe that my indictments should be dismissed with prejudice, and my prejudice is found in the deprivation of liberty since the date of my arrest.

(§ 2255 Mot. Ex. F, Dkt. No. 65.)

## II.  ANALYSIS

### A.  Section 2255

Under § 2255, a movant may attack his sentence or conviction on the grounds that it was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  *Id.* § 2255(a).  The movant bears the burden of proving grounds for collateral relief by a preponderance of the evidence.  *See United States v. Cook*, Criminal No. 1:11-cr-188, 2019 WL 921448, at *1 (E.D. Va. Feb. 25, 2019) (citing *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967)).  In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  § 2255(b).  The record in this case conclusively establishes that Lottier is not entitled to relief, so the court may address the motion without an evidentiary hearing.

### B.  Ineffective Assistance of Counsel

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  First, counsel's performance must have been deficient.  *Id.* at 687.  Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment.  *Id.*  Counsel's performance must have fallen "below an objective standard of reasonableness" under the prevailing norms of the legal community.  *Id.* at 688.  "Judicial scrutiny of counsel's

performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic, tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). This presumption must be rebutted by the moving party. *Strickland*, 466 U.S. at 689.

Second, the deficient performance must have prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the defendant was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If either component of the *Strickland* test is not met, the ineffective-assistance claim will fail. *Id.* at 700. Also, the court need not address both components if there is a deficient showing on either prong. *Id.* at 697.

When a defendant makes a knowing and voluntary guilty plea, that person "waives all jurisdictional defects in the proceedings conducted prior to entry of the plea." *United States v. Moussaui*, 591 F.3d 263, 278 (4th Cir. 2010). Moreover, a guilty plea generally limits collateral attacks to "whether the plea was counseled or voluntary." *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1295 (4th Cir. 1992). A claim of ineffective assistance prior to the guilty plea may undermine that plea. *See id.* A higher burden applies for ineffective assistance claims when the defendant pleads guilty. To satisfy *Strickland*'s prejudice prong, a defendant must show that but for counsel's ineffective assistance, he would not have pled guilty and would have gone to trial.

7

*Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007). The defendant's subjective belief that he would have chosen trial over a plea is not relevant to this inquiry. *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012). What matters is "whether proceeding to trial would have been objectively reasonable in light of all of the facts." *Id.* In evaluating post-guilty plea claims of ineffective assistance, a defendant's statements under oath expressing satisfaction with counsel are binding absent "clear and convincing evidence to the contrary." *Fields*, 956 F.2d at 1299. Statements made during Rule 11 proceedings constitute strong evidence that a plea was voluntary. *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991).

## C. Lottier's Claims

Lottier enumerates five claims in his motion: (1) counsel was ineffective regarding plea negotiations and advising the defendant to enter the plea agreement; (2) counsel's ineffective assistance renders Lottier's plea unconstitutional; (3) counsel advised Lottier to plead guilty to an offense for which he is innocent; (4) counsel provided ineffective assistance as it relates to Lottier's Rule 11 hearing; and (5) counsel's failures deprived Lottier of a material adverse process. (§ 2255 Mot., Dkt. No. 65.)

Thus, Lottier's claims are couched in the language of ineffective assistance of counsel. Such claims are appropriately brought in a § 2255 motion and are not subject to an appeal or collateral attack waiver. *See Barnett v. Quintana*, Case No. 5:18-cv-00279, 2018 WL 7078579, at *13 (S.D.W. Va. Dec. 18, 2018) ("The Supreme Court has made clear that ineffective assistance of counsel claims are generally not procedurally defaulted if not raised in a direct appeal and may be raised in the more appropriate forum of an initial § 2255 petition.") (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)); *Butler v. United States*, 173 F. Supp. 2d 489, 492–93 (E.D. Va. 2001) (explaining that direct appeal and § 2255 waivers are generally

enforceable but subject to certain exceptions, including "where the agreement is involuntary or unknowing, the sentence exceeds the statutory maximum, or the defendant claims the agreement was entered with ineffective assistance of counsel").

Some of Lottier's claims appear to venture outside the realm of ineffective assistance. For example, he maintains that counts one and two of the indictment are deficient because they fail to provide sufficient facts or the essential elements of each offense. Lottier also claims that the plea agreement contains a "constructive amendment" to the indictment because while the indictment charges him with violating 18 U.S.C. § 924(c) under the possession prong, the plea agreement recites the full text of the statute, including the "use and carry . . . during and in relation to" prong of the statute. (Plea Agmt., Dkt. No. 32 ("Count 2 charges me with possessing a firearm in furtherance of a drug trafficking crime and using and carrying a firearm during and in relation to a drug trafficking crime . . .").)[1]

Any claim not tied to the alleged ineffectiveness of Lottier's counsel is subject to the rule of procedural default. *See Jones v. United States*, No. 1:13-CR-284, 2016 WL 1367151, at *3 (E.D. Va. Apr. 5, 2016) (procedural default rule applies where defendant has waived his right to appeal via a plea agreement) (citing *United States v. Majid*, 196 F. App'x 685, 686 (10th Cir. 2006)). The doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless the movant can show cause and prejudice, or that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack," such as where a petitioner can demonstrate actual innocence. *Umar v. United States*, 161 F. Supp. 3d 366, 374 (E.D. Va. 2015) (quoting *United States v.*

---

[1] Aside from the issue of procedural default, the court notes regardless of any inaccurate description of count two in the plea agreement, the court read both counts of the indictment at the plea hearing, and Lottier unequivocally stated that he understood the nature of the charge to which he was actually pleading.

*Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999)). Actual innocence requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). In other words, Lottier must demonstrate that he "has been incarcerated for a crime he did not commit." *United States v. Jones*, 758 F.3d 579, 584 (4th Cir. 2014).

In his declaration, Lottier asserts that he is "actually innocent of all charged offenses." Contrary to Lottier's bald assertion of actual innocence, the factual basis for the guilty plea establishes that Lottier is guilty. Nothing in his declaration contradicts the evidence of guilt that formed the factual basis for the guilty plea. Therefore, Lottier cannot use actual innocence as a gateway for the court to consider any defaulted claims. *See House v. Bell*, 547 U.S. 518, 536–37 (2006) (explaining that a petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

As for the claims the court can address, Lottier argues that his indictments were insufficient, his plea agreement constructively amended his indictment, and his Rule 11 hearing was unconstitutional. These violations, Lottier contends, were the product of counsel's ineffective assistance. Lottier is bound, however, by the representations made at his plea colloquy to the effect that he was satisfied with the work done by his counsel. Before accepting Lottier's guilty plea, the court conducted an extensive colloquy with Lottier. Among many other inquiries, the court asked Lottier about the quality of his attorney's representation:

> THE COURT: Mr. Lottier, have you discussed your case completely with Mr. Cargill?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Are you confident that you understand his advice?

THE DEFENDANT: Yes, I do.

THE COURT: And have you listened carefully to his advice and thought about it in making your decision to plead guilty?

THE DEFENDANT: Ad nauseum, Your Honor.

THE COURT: I don't think that was a comment on you, Mr. Cargill. Are you fully satisfied with the advice and representation given to you in this case by Mr. Cargill?

THE DEFENDANT: I am, ma'am.

THE COURT: And do you understand that the decision to plead guilty must be your own decision not Mr. Cargill's decision.

THE DEFENDANT: I do.

THE COURT: And is it in fact your own decision to plead guilty?

THE DEFENDANT: It is.

THE COURT: Before I ask you how you would like to plead, then, Mr. Lottier, is there anything you want to talk to Mr. Cargill about?

THE DEFENDANT: No. We're good, Your Honor.

THE COURT: Anything you want to tell me or ask me?

THE DEFENDANT: No. I think I fully understand everything, Your Honor.

THE COURT: How do you plead, then, to Count One of the indictment?

THE DEFENDANT: Guilty.

THE COURT: And how do you plead to Count Two of the indictment?

THE DEFENDANT: Guilty.

(9/6/16 Hr'g Tr. 24:25–26:29.) Lottier has not provided any evidence, much less "clear and convincing evidence," *see Fields*, 956 F.2d at 1299, to undermine or contradict the statements he made at his plea hearing or to suggest that his representations during the plea were untruthful or involuntary. Moreover, Lottier's contention in his declaration that he would have rejected the plea and gone to trial would have been unrealistic given Lottier's confession to law enforcement that he was a heroin dealer and possessed firearms for protection in the drug trade. *See Kelly v. United States*, No. 3:03CR200-2-MU, 2007 WL 4568973, at *4 (W.D.N.C. Dec. 20, 2007) (noting that the prejudice inquiry is "an objective one based on whether going to trial might reasonably have resulted in a different outcome"); *Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses, petitioner could not establish prejudice). Thus, Lottier cannot establish deficient performance or prejudice under *Strickland*, and his § 2255 motion will be dismissed.

**D. Motion to Appoint Counsel**

There is no constitutional right to counsel in post-conviction proceedings, but the court may appoint counsel to a financially eligible person in "the interests of justice." 18 U.S.C. § 3006A(a)(2)(B). The interests of justice do not favor appointment of counsel given the court's conclusion that Lottier is not entitled to relief under § 2255.

**E. Motion for Release**

Lottier moves for a recognizance bond pending the resolution of his § 2255 motion. Before a prisoner can be released on bail pending a collateral attack on his conviction, he must show substantial constitutional claims on which he has a high probability of success, and exceptional circumstances making a grant of bail necessary for the habeas remedy to be effective. *United States v. Eliely*, 276 F. App'x 270, 270 (4th Cir. 2008). For the reasons stated

herein, Lottier does not have a high probability of success on his constitutional claims. Therefore, the request for a recognizance bond will be denied.

**F. Certificate of Appealability**

When issuing a final order adverse to the § 2255 movant, the court must issue or deny a certificate of appealability. *See* Fed. R. Gov. § 2255 Proc. 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

The court declines to issue a certificate of appealability because Lottier has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's assessment of his claims debatable or wrong.

### III. CONCLUSION

For these reasons, the court will deny Lottier's motion to appoint counsel, deny his motion for release on recognizance, grant the government's motion to dismiss, and decline to issue a certificate of appealability. The court will issue an appropriate order.

Entered: April 9, 2020.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge