IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 7:16-cr-00030 |
| v. | ) | |
| | ) | By:  Elizabeth K. Dillon |
| JEROME LOTTIER | ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

On December 3, 2020, defendant Jerome Lottier, proceeding *pro se*, filed his second motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) and motion to appoint counsel.  (Dkt. Nos. 112, 113.)  Lottier initially sought compassionate release to care for his minor child, which the court denied.  (Dkt. No. 114.)  Lottier now seeks compassionate release due to an outbreak of COVID-19 in the prison where he is held.  (Dkt. No. 112.)  In accordance with local Standing Order 2019-1, the court appointed the Federal Public Defender (FPD) to represent Lottier.  (Dkt. No. 115.)  On December 14, 2020, the FPD responded to the court's order and supplemented Lottier's motion.  (Dkt. No. 114.)  On January 6, 2021, the government filed its response in opposition to Lottier's motion.  (Dkt. No. 125.)  On January 7, 2021, the FPD submitted a reply to the government's motion.  (Dkt. No. 126.)  Lottier supplemented his motion by letter on December 28, 2021, January 28, 2021, February 11, 2021, March 29, 2021, and May 3, 2021.[1]  (Dkt. Nos. 122, 126, 129, 130, 131.)  For the reasons stated below, the court will deny Lottier's motion.

---

[1] Lottier's May 3rd letter has been construed as a third motion for compassionate release based on changed facts and circumstances regarding the caretaking of his minor child.  (Dkt. No. 131.)  The court will not address Lottier's third request for compassionate release in this opinion.

1

I. BACKGROUND

On September 16, 2016, Lottier pleaded guilty to one count of possessing with intent to distribute and distributing a substance containing a detectable amount of heroin and one count of possessing a firearm in furtherance of a drug trafficking crime. (Dkt. Nos. 38, 40.) Lottier sold heroin in Roanoke and kept a pistol for protection.[2] (Dkt. No. 39.) On January 12, 2017, the court sentenced Lottier to 96 months imprisonment. (Dkt. No. 50.) He is currently held at Petersburg Medium Security Federal Correctional Institution (Petersburg Medium) in Virginia. (Dkt. No. 106 at 1.)

Lottier is 54 years old and has served approximately two-thirds of his sentence. (Dkt. No. 116 at 3; Dkt. No. 116-1 at 1.) His projected release date is March 18, 2023, and he is eligible for home confinement in September 2022. (*Id.*) He notes that he has completed numerous rehabilitation programs at FCC Petersburg, including the non-residential drug abuse program. (Dkt. No. 116). Lottier states that he was previously held at Petersburg Low but he was transferred to Petersburg Medium in March 2020 due to population changes at the facilities. (Dkt. No. 122.)

Lottier based his first motion for compassionate release on the passing of his domestic partner who was the caretaker of his biological daughter. (Dkt. Nos. 109, 109-1), and that motion was denied (Dkt. No 114).

Lottier now requests release based upon his susceptibility to COVID-19 at his current facility and the severe consequences of COVID-19 infection based on his medical conditions. (Dkt. No. 112.) Lottier claims that he "suffers from a host of health conditions that are not being treated due to COVID restrictions and [these conditions] are progressive in nature." (Dkt. No.

---

[2] Lottier states that his gun ownership was not related to his drug trafficking activities. (Dkt. No. 129 at 5.)

2

128 at 1.) Lottier states that he has degenerative joint disease, advanced periodontal disease, obesity with a BMI over 35, hepatitis C in remission, kidney damage, hypertension, and depression. (*Id.* at 1–2.) Lottier's Bureau of Prison (BOP) health records confirm many of these conditions but do not list obesity, hypertension, or kidney damage.[3] (Dkt. No. 119.) In October 2020, Lottier tested positive for COVID-19. (Dkt. No. 119 at 3, 18.) According to the BOP, he was asymptomatic and has since recovered with no ongoing issues related to the virus. (*Id.*; Dkt. No. 116 at 3–4.) Lottier disagrees, stating that he now has difficulty breathing and uses prednisone and an inhaler. (Dkt. No. 129 at 6–7.) He expresses concern about the lasting effects of his COVID-19 infection. (*Id.*)

Lottier believes that he has exhausted his administrative remedies. He states that the warden at Petersburg Medium denied his request and subsequent appeal. (Dkt. No 112.) In addition, he asserts that BOP did not respond to his requests "within the time limits provided in BOP policy." (Dkt. No. 128 at 4.) The government argued that Lottier failed to provide documentation substantiating the timing of these requests. (Dkt. No. 125.) Lottier has sought to address this issue by filing a letter of denial from the warden with his reply. (Dkt. No. 126-A.)

## II. ANALYSIS

**A. Compassionate Release**

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act, provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse

---

[3] For the purpose of this motion for compassionate release, the court will only consider Lottier's health conditions that are listed in his BOP records or supported by other documentary evidence.

> of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

In addition to satisfying the above, the reduction must be "consistent with [the] applicable policy statement issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). However, "the Commission has yet to issue a policy statement that applies to motions filed by defendants under the recently amended § 3582(c)(1)(A)." *United States v. Burnell*, 837 F. App'x. 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th Cir. 2020)). Therefore, a court may "consider any extraordinary and compelling reason for release that a defendant might raise." *Id.*

"A defendant seeking compassionate release has the burden of establishing that such relief is warranted." *United States v. Ferguson,* No. 515CR00018KDBDSC1, 2020 WL 5300874, at *2 (W.D.N.C. Sept. 4, 2020). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). Rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification. 28 U.S.C. § 994(t).

**B. Exhaustion**

While the First Step Act modified § 3582(c)(1)(A) to allow a prisoner to bring a motion on his or her own behalf, the statute includes an exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A). Section 3582(c)(1)(A) now allows a petitioner to bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure

4

of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* Accordingly, a defendant seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id*. In addition, "[i]t is defendant's burden to show that he has exhausted his remedies or that exhaustion would be futile or result in undue prejudice." *United States v. Morrison*, No. 5:07-CR-00050-KDB-DSC, 2020 WL 4016253 at *2 (W.D.N.C. July 16, 2020)

The § 3582 exhaustion requirement is not a jurisdictional bar but rather a claims-processing rule that may be waived under certain conditions. See *United States v. Brown*, Criminal No. 7:19-cr-00036, 2020 WL 4506798, at *3 (W.D. Va. Aug. 5, 2020). Specifically, the exhaustion requirement may be waived if: "(1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice." *Coleman v. United States*, 465 F. Supp. 3d 543, 545 (E.D. Va. 2020). Courts have held that "[t]he COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection . . . justif[ies] the waiver of the exhaustion requirement." *Id.* (citing *United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020); *United States v. Perez*, 451 F. Supp. 3d 288, 292–94 (S.D.N.Y. 2020); *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1196–97 (E.D. Wash. 2020)).

Here, the government argues that Lottier failed to exhaust his administrative remedies because he did not provide the court with documentation of his request to the warden or his subsequent request to appeal. However, Lottier remedied this issue by filing with the court a copy of the warden's denial of Lottier's request on November 23, 2020. (Dkt. No. 126).

Although it is unclear whether Lottier appealed the warden's denial and, if so, whether the appeal was denied (Dkt. No. 126-A), the court will waive the exhaustion requirement given the COVID-19 pandemic and Lottier's attempt to exhaust his request with the warden.

## C. Extraordinary and Compelling Reasons

Lottier bases his motion for release on his risk of contracting COVID-19 while in custody. "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [their] prison facility." *United States v. Harper*, No. 7:18-cr-00025, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citing *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020); *United States v. Dungee*, Case No. 7:15CR00005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020)).

Lottier has hepatitis C which may increase his risk for severe illness from COVID-19. According to the CDC, hepatitis C is a liver infection that may result in long-term, chronic liver disease. *What to Know About Liver Disease and COVID-19*, Centers for Disease Control and Prevention (Feb. 8, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html. The CDC advises that hepatitis C might increase risk for severe illness "if [the patient's] medical conditions are not well controlled." *Id*. Importantly, Lottier's hepatitis C is well controlled, and he is currently in remission. Still, some courts have found extraordinary and compelling reasons for release based on hepatitis C in remission. *See United States v. Stephenson*, 461 F. Supp. 3d 864, 872 (S.D. Iowa 2020) (granting compassionate release to a defendant with chronic hepatitis C notwithstanding the government's argument that defendant was cured); *United States v. Ludwig*, 2020 WL 4547347, at *4 (E.D. Ca. Aug. 6, 2020)

(finding defendant with hepatitis B and C was at increased risk of suffering serious consequences from COVID-19 even though government argues defendant's conditions are in remission).

While Lottier's hepatitis C may make him more susceptible to COVID-19, Lottier may also have some immunity to the virus from his COVID-19 infection in October 2020. The CDC has stated that "reinfection with the virus that causes COVID-19 is uncommon in the months after initial infection but may increase with time." *See* Centers for Disease Control and Prevention, *Benefits of Getting Vaccinated*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited May 6, 2021). According to the National Institutes of Health, "[t]he immune systems of more than 95% of people who recovered from COVID-19 had durable memories of the virus up to eight months after infection." Sharon Reynolds, *Lasting Immunity Found After Recover of COVID-19*, NIH Research Matters (January 26, 2021) https://www.nih.gov/news-events/nih-research-matters/lasting-immunity-found-after-recovery-covid-19. Here, Lottier's hepatitis C would ordinarily make him more susceptible to COVID-19, but his prior COVID-19 infection means he likely has some level of natural immunity to the virus.

Even if Lottier's health condition does make him more susceptible to the virus, he no longer faces a particularized risk of contracting COVID-19 in prison. As of May 6, 2021, the BOP reported that one inmate and no staff are currently positive for COVID-19 at Petersburg Medium. See Bureau of Prisons, *Covid-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 6, 2021). While the fact that Lottier previously contracted the virus at his facility is concerning, federal inmates nationwide are beginning to receive COVID-19 vaccinations. Between its two facilities, Petersburg FCC has vaccinated 1,417 of 2,158 inmates as of May 6, 2020. Bureau of Prisons, *COVID-19 Vaccine*

*Implementation*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 6, 2021); Bureau of Prisons, *FCI Petersburg Medium*, https://www.bop.gov/locations/institutions/pem/ (last visited May 6, 2021) (1,502 total inmates); Bureau of Prisons, *FCI Petersburg Low*, https://www.bop.gov/locations/institutions/pet/ (last visited May 6, 2021) (656 total inmates). Even if Lottier has not received a COVID-19 vaccine, based on the interfacility vaccination rate of about 65 percent, Lottier is living among a more vaccinated population in prison than he would outside the facility. *See COVID-19 Vaccine Summary*, VA. DEP'T OF HEALTH, (May 6, 2021), https://www.vdh.virginia.gov/coronavirus/covid-19-vaccine-summary/ (reporting a statewide vaccination rate of 33 percent). Therefore, Lottier does not have a particularized risk of contracting the virus at Petersburg Medium and has not shown an extraordinary and compelling reason for compassionate release.

### III.  CONCLUSION

Pursuant to 18 U.S.C. § 3582(c)(1)(A), the court finds that no extraordinary and compelling circumstances warrant a reduction in Lottier's sentence. For the reasons stated above, it is hereby ORDERED that Lottier's motion for compassionate release (Dkt. Nos. 112, 113) is DENIED. The clerk is directed to provide a copy of this order to the defendant, all counsel of record, and the United States Probation Office.

Entered: May 28, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge