IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 7:16-cr-00030 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| JEROME TYLER LOTTIER ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Defendant Jerome Tyler Lottier, proceeding *pro se*, filed his third motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. No. 131.) Lottier first sought compassionate release to care for his minor child, which the court denied. (Dkt. No. 106, 114.) He later sought compassionate release due to the COVID-19 pandemic which the court also denied. (Dkt. No. 112, 132.) He now seeks compassionate release based on changed circumstances regarding the caretakers of his minor child. (Dkt. No. 131.) In accordance with local Standing Order 2019-1, the court appointed the Federal Public Defender (FPD) to represent Lottier (Dkt. No. 115), but it declined to file a supplement (Dkt. No. 134). The government opposed the motion. (Dkt. No. 125.) Lottier has received multiple letters of support from friends noting his efforts towards rehabilitation and his commitment to care for his daughter. (Dkt. Nos. 136, 138.) For the reasons stated below, the court will deny Lottier's motion.

I.  BACKGROUND

On September 16, 2016, Lottier pleaded guilty to one count of possessing with intent to distribute and distributing a substance containing a detectable amount of heroin and one count of possessing a firearm in furtherance of a drug trafficking crime. (Dkt. Nos. 38, 40.) Lottier sold

heroin in Roanoke and kept a pistol for protection.[1]  (Dkt. No. 39.)  On January 12, 2017, the court sentenced Lottier to 96 months imprisonment.  (Dkt. No. 50.)  He is currently held at Petersburg Low Security Federal Correctional Institution in Virginia with a release date of May 18, 2023.[2]

Lottier is 55 years old and has served approximately two-thirds of his sentence.  (Dkt. No. 116 at 3; Dkt. No. 116-1 at 1.)  He is eligible for home confinement in September 2022.  (*Id.*)  He notes that he has completed numerous rehabilitation programs while incarcerated, including the non-residential drug abuse program.  (Dkt. No. 116).  For some time Lottier was transferred from Petersburg Low to Petersburg Medium, but he states that was due to population changes at the facilities.  (Dkt. No. 122.)

His first motion for compassionate release was premised upon the passing of his domestic partner who was the caretaker of his biological daughter.  (Dkt. No 114.)  The court denied that motion, reasoning that "Lottier has not provided evidence that he is the only available or suitable caretaker for his daughter" and "[t]he warden at Petersburg Medium asserts that Lottier's family members have been capable caretakers for his daughter since her mother's passing."  (*Id.* at 4.)

Lottier now requests release based on changed circumstances regarding the caretakers of his minor child.  (Dkt. No. 112.)  Lottier explains that his daughter's maternal grandparents, who have been caring for the child, have developed multiple health problems.  His daughter's maternal grandfather had his leg amputated due to diabetes and is now in wheelchair.  (Dkt. No. 131 at 1–2.)  Additionally, the maternal grandfather suffers from obesity and high blood pressure and recently tested positive for COVID-19.  (Dkt. No. 131 at 1.)  He notes that his daughter's

---

[1] Lottier now states that his gun ownership was not related to his drug trafficking activities.  (Dkt. No. 129 at 5.)

[2] *See* https://www.bop.gov/inmateloc/ (last visited May 13, 2022).

maternal grandmother suffers from anemia, liver, and kidney issues, and "too many [other] medical issues to list . . . and her conditions are only getting worse." (*Id.* at 1–2.) Lottier also expresses gratitude for his daughter's maternal grandparents who have "always cared for [him], respected [him] and supported [him] like [he] was part of their family." (*Id.* at 3.) He explains that his daughter's maternal grandparents can provide for his daughter financially, but he worries that they are no longer physically able care for her. (*Id.* at 3.) In addition to his concerns regarding the care of his daughter, Lottier reasserts his concerns about contracting COVID-19 in prison and expresses a desire to care for his aging mother. (*Id.* at 3–4.) Lottier seeks to serve the remainder of his sentence on home confinement[3] or in the alternative, he seeks early release. (*Id.* at 4.)

## II. ANALYSIS

### A. Compassionate Release

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act, provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

---

[3] It is generally not within the court's authority to convert part of a defendant's already-imposed sentence to home confinement. "Discretion to release a prisoner to home confinement lies solely with the Attorney General [and by delegation the BOP]." *Deffenbaugh v. Sullivan*, No. 5:19-HC-2049-FL, 2019 WL 1779573, at *1 (E.D.N.C. Apr. 23, 2019) (collecting cases). The First Step Act "did not modify the requirement that the Bureau of Prisons, not the Court, make[s] the decision to place a prisoner on home confinement or in a residential re-entry center." *United States v. Burkhart*, No. CR 6:03-036-DCR, 2019 WL 615354, at *2 (E.D. Ky. Feb. 13, 2019) (citing 18 U.S.C. § 3624(b)(1) & (c)(1)).

>factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
>(i) extraordinary and compelling reasons warrant such a reduction . . . .

Thus, after considering any applicable § 3553(a) factors, if the court finds extraordinary and compelling reasons warrant a reduction and if it finds a reduction consistent with any applicable Sentencing Commission policy statements, it may reduce a term of imprisonment. However, "the Commission has yet to issue a policy statement that applies to motions filed by defendants [rather than motions filed by BOP] under the recently amended § 3582(c)(1)(A)." *United States v. Burnell*, 837 F. App'x 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th Cir. 2020)). *See also United States v. Hargrove*, 30 F.4th 189 (4th Cir. 2002). The court, may, nonetheless, look to U.S.S.G. § 1B1.13 for guidance. *McCoy*, 981 F.3d at 282 n.7.

A defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See Hargrove,* 30 F. 4th at 195 (noting the information provided by the inmate "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release."); *United States v. Brewington*, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019). *See also United States v. Weaver*, No. 1:17-CR-235, 2020 WL 4810123 (E.D. Va. Aug. 18, 2020) (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-57 (2005) (defendant bears burden as party seeking relief absent statutory guidance to the contrary)). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). Rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification. 28 U.S.C. § 994(t).

### B. Exhaustion

While the First Step Act modified § 3582(c)(1)(A) to allow a prisoner to bring a motion on his or her own behalf, the statute still includes an exhaustion requirement. The court has previously found that § 3582's exhaustion requirement is not a jurisdictional bar, but rather a claims-processing rule that may be waived. *See United States v. Brown*, Criminal No. 7:19-cr-00036, 2020 WL 4506798, at *3 (W.D. Va. Aug. 5, 2020). Here, the government has not contested Lottier's exhaustion of administrative remedies; therefore, the exhaustion requirement does not stand in the way of considering Lottier's request for relief.

### C. Extraordinary and Compelling Reasons

The "incapacitation of the caregiver of [a] defendant's minor child" can be an extraordinary and compelling reason for compassionate release. U.S.S.G. § 1B1.13 n.1(C)(i); *see United States v. Edmond*, No. 5:17-CR-398-1H, 2021 WL 1234509, at *2 (E.D.N.C. Apr. 1, 2021) (granting compassionate release where the caretaker of defendant's minor children was hospitalized with congestive heart failure and children had to be uprooted to live with a new caretaker). However, where a caretaker is struggling to care for a child, but not incapacitated, courts have denied compassionate release. *See United States v. Radetski*, No. 7:17-CR-82-D, 2021 WL 2056993, at *2 (E.D.N.C. May 21, 2021) ("[a]lthough [defendant] contends that his children's mother is struggling to care for them, he does not state that the mother is incapacitated or unable to care for their children or . . . [the] only available caregiver."); *United States v. Kennon*, No. 5:18-CR-437-D, 2021 WL 1933937, at *2 (E.D.N.C. May 13, 2021) ("[a]lthough [defendant] contends that her parents are struggling to care for her son, she does not state that her parents are incapacitated or unable to care for her son."); *United States v. Harper*, No. 7:18-CR-94-D, 2021 WL 1876126, at *3 (E.D.N.C. May 10, 2021) ("[a]lthough [defendant] contends that

5

his daughter's mother is struggling to care for her, he does not state that the mother is incapacitated or unable to care for their daughter.").

Here, Lottier expresses concern about his daughter's maternal grandparents serving as caretakers for his daughter while they face multiple health problems. However, Lottier does not claim that his daughter's maternal grandparents are incapacitated or unable to care for his child. Rather, he argues that "they are no longer the best [caretakers]." (Dkt. No. 131 at 3.) The court appreciates Lottier's concern for his daughter and for the health of her grandparents. However, he has not provided the court with evidence to conclude that the grandparents are no longer capable caretakers for his daughter. The court is sympathetic to Lottier's desire to parent his daughter and to care for his aging mother, but these concerns, without more, do not provide a basis for compassionate release. For these reasons, Lottier has failed to carry his burden to show extraordinary and compelling reasons for compassionate release.[4]

### III. CONCLUSION

For the reasons stated above, it is hereby ORDERED that Lottier's third motion for compassionate release (Dkt. Nos. 131) is DENIED. The clerk is directed to provide a copy of this order to the defendant, all counsel of record, and the United States Probation Office.

Entered: May 13, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[4] Regarding Lottier's arguments about COVID-19, the court references its earlier opinion denying Lottier's motion for compassionate release due to the COVID-19 pandemic. (Dkt. No. 132.)